LILLA M. FLOURNOY, complainant,

*v.*

HARRY H. FLOURNOY, defendant.

[Submitted June 11th, 1924. Decided July 14th, 1924.]

**Divorce—Rights in Property of the Two Parties—Title in Name of Husband—Independent Funds of Wife—Joint Contributions to Purchase Price—Titles of Certain Property in Name of Both.**

On bill, &c.

*Mr. Harold Bouton,* for the complainant.

*Mr. Milton M. Unger,* for the defendant.

FOSTER, V. C.

This controversy relates to the respective rights of the parties in a property known as No. 53 Bleecker street, in the city of Newark, and also in certain property in Tampa, Florida.

The parties were husband and wife until divorced by a decree of this court, in favor of the defendant herein, which was entered on November 23d, 1922.

In the pleadings certain issues were joined respecting loans or notes for $500, $200 and $200, respectively. During the pendency of the hearing the $500 claim has been paid to defendant, and counsel for defendant in his brief states "there would seem to be no good reason for now contending that she [complainant] is obligated on the Hawkins and Blacklock notes, and these two items are abandoned, and the court need not, so far as the defendant is concerned, consider them."

This concession confines the issues to the rights of the parties in the two properties mentioned, and the dispute

relating to the Bleecker street property will be first considered.

In this consideration the following facts are found established by the proofs:

The parties first became acquainted about the year 1906, and complainant was then the wife of one Tichenor, by whom she had two children. Complainant had independent means, acquired through inheritance, and between 1906 and 1912 she purchased several parcels of real estate and title thereto was taken in the name of the defendant in trust for her.

On June 10th, 1911, complainant purchased the Bleecker street property for $5,600, title being taken in the name of the defendant.

About three months later, on September 6th, 1911, complainant obtained a decree of divorce against Tichenor in Texas, and the following day she married the defendant. No children have been born of this marriage.

From June, 1911, until the parties separated in 1919, the defendant collected the rents from the property and paid its fixed charges therefrom, and they used the surplus income for their living expenses. After the separation complainant collected the rents for about one year, and from November 20th, 1920, defendant, as receiver, resumed their collection, and has continued to do so, and he has accounted for his receipts and disbursements up to April, 1923. Exceptions were taken by complainant to this accounting and they were overruled.

Defendant admits that the Bleecker street property belongs to complainant, but claims that her right thereto is subject to his claim for $183.46 found to be due him on an accounting had herein for $75 paid by him on account of the purchase price of the property, and the balance for repairs, &c., made by him to the property, and also subject to one-half of the profits that may be realized from the sale of the property.

This division of profits he alleges was orally agreed upon between him and complainant at the time of the purchase.

Assuming, as claimed, that such an agreement is not within the statute of frauds, there is no proof, aside from defendant's testimony, to establish it. Complainant denies any such agreement or arrangement, and in this she is corroborated by the fact that defendant never asserted any such claim until this litigation commenced, and also by the fact that he had never made claim for any share of the profits in the seven or eight other properties which complainant had purchased and placed in his name and had disposed of before their separation.

My conclusion respecting the Bleecker street property is that defendant should be decreed to convey this property to complainant, subject to all encumbrances placed thereon with her consent; that defendant is entitled to be paid the amount found due him on the accounting of $183.46, and, in addition, should receive an allowance for his services as receiver from November 20th, 1920; that he should file a supplemental account of his receipts and disbursements to date, and that the surplus of receipts, after the payment of the amount above mentioned and the allowance to him as receiver, should be paid to complainant.

The established facts relating to the Florida property, which complainant claims is hers and in which defendant claims a half interest, because he asserts he paid part of the purchase price, show that, aside from defendant's testimony, there is not the slightest proof that he paid one dollar of his own money for the purchase of this property. He has attempted to show that from his own funds he gave complainant and her attorney checks amounting to $1,182.12, with which she purchased the property and had title thereto placed in their joint names, and he suppresses or disputes the fact, which is clearly established by his own and by her bank account, that the money he gave her was her own and part of the proceeds of the sale of her property on Fifth street, Newark. Complainant purchased this property in 1900; she sold it by a deed dated August 19th, 1911, and recorded on August 25th. On this latter date defendant deposited in his own bank account $1,999.50, the proceeds

of this sale; with $1,000 of this money he opened an account in his own name in a Tampa, Florida, bank, and also drew $350 for the expenses of their trip to Tampa.

The Tampa property was bought for $1,200 in March, 1912, about six months after the parties were married. Complainant paid the entire purchase price by checks on her own bank account, viz., one for $500, dated March 2d, 1912, and the other for $700, dated March 28th, 1912, and, in addition, she personally has paid taxes and assessments amounting to over $560.

Defendant at first claimed a one-half interest in the property subject to a $700 mortgage; later, apparently recalling that complainant had paid this $700, he enlarged his claim to an absolute half interest in the property.

Title to the property was taken in the name of both parties at the suggestion of defendant, and on the assurance to complainant from him and the real estate agents through whom the property was purchased, that it made no difference, as defendant would have to join in the conveyance if complainant ever sold the property.

While this cause was pending in 1923, and without the knowledge of complainant, and without the knowledge of his own counsel, defendant conveyed his alleged one-half interest in this property to one of the real estate agents from whom is was purchased, and he is unable to tell whether he realized $300 or $400 from this sale, and in order to stop partition proceedings by the purchaser and to obtain complete title to the property complainant was obliged to pay the purchaser $1,077 for the reconveyance of defendant's alleged one-half interest in the property.

From defendant's attitude upon the stand, and from his shifty, evasive and unsatisfactory answers, I am convinced he made this sale and conveyance of his alleged interest in the property in utter defiance of the power of the court, and for the purpose of defrauding complainant, and in furtherance of an understanding with the purchaser by which advantage could be taken of complainant, a non-resident of

Florida, who they thought would not learn of this sale and conveyance in time to protect her interests.

The proofs conclusively show that defendant has not now, and never had, any right, title or interest in this property, except such as the law gave him as the husband of complainant. The proofs further show that by his fraudulent conduct and his false assertions of an interest in this property, he has caused complainant a loss of at least $1,077, with the interest thereon from the date she paid this amount, for the reconveyance of his alleged interest in this property, and a decree will be advised that he be directed to pay to complainant this amount, with interest.

The terms of the decree may be settled on three days' notice.